(163 P.3d 313)
No. 94,509

ANTHONY J. MARTIN, *Appellant*, v. KANSAS DEPARTMENT OF REVENUE, *Appellee*.

2

Opinion filed August 11, 2006.

*C. Richard Comfort*, of Condray & Comfort, of Concordia, for appellant.

*Ted E. Smith*, of Kansas Department of Revenue, for appellee.

Before McANANY, P.J., MALONE and CAPLINGER, JJ.

CAPLINGER, J.: Anthony J. Martin appeals the district court's judgment affirming the Kansas Department of Revenue's suspension of his driver's license. We affirm.

*Factual and procedural background*

On April 28, 2004, at approximately 5 p.m., Anthony Martin left the business he owned in Glasco, Kansas, and drove to a golf course to do some work. He had a few beers at the golf course and sometime later consumed two or three more beers at a local bar. Martin left the bar sometime between 9:30 p.m. and 9:50 p.m. and got into his vehicle, which was parked across the street from the bar.

Cloud County Sheriff's Deputy Bradley Swihart witnessed Martin leave the bar, back his vehicle into the street, and drive forward a short distance without using his headlights. Swihart activated his emergency lights and attempted to pull Martin over for failure to use headlamps, in violation of K.S.A. 8-1703(a). Martin then turned right into an alleyway without using his turn signal, drove approximately 50 yards, parked behind his place of business, and walked quickly toward the business' back door.

Martin testified at the suppression hearing that when he got out of his vehicle he saw Deputy Swihart pull up with his vehicle's emergency lights activated. According to his testimony, Martin continued toward the back door of his business because he thought the officer was "joking around." Deputy Swihart exited his vehicle and followed Martin to the back door of his business. As Martin entered the door, Deputy Swihart asked him what he was doing and if he had seen the emergency lights. Martin told the deputy he saw the lights but that he wanted to make sure the front door to his store was locked. Martin then advised the deputy he would be right back.

As Deputy Swihart followed Martin into the store, he noticed Martin was swaying, stumbling, and staggering as he walked. After Martin checked the front door, Deputy Swihart asked if Martin had been drinking, to which Martin replied, "yes." Deputy Swihart then asked Martin how many beers he had, and Martin responded, "five or six." During this time, the deputy also detected a strong

odor of alcohol on Martin's breath and noticed his eyes were blood-shot. Deputy Swihart asked Martin to step outside and perform field sobriety tests.

Inside the store, Martin attempted to light a cigarette. Deputy Swihart instructed Martin not to do so because Swihart wanted to perform a preliminary breath test (PBT). Marlin later lit a cigarette outside, and Deputy Swihart told him to put it out. Deputy Swihart explained to Martin at least twice that Martin could not put anything into his mouth as it would affect the PBT. Nevertheless, Martin continued to attempt to put cigarettes and some type of candy in his mouth.

Deputy Swihart decided not to administer a PBT, because the test required a 15-minute deprivation period that started over each time Martin put something in his mouth. At some point, Martin told Deputy Swihart that he (Martin) "did not believe he would pass a breath test."

Outside the store, Deputy Swihart asked Martin to perform the "one-leg-stand" field sobriety test. During the test, Martin leaned against his vehicle for support. Deputy Swihart instructed him to move away from the vehicle, but Martin continued to lean against it. Martin also "put his foot down, raised his arms for balance, swayed and hopped showing all four clues." The deputy did not give Martin the "walk and turn" test because Martin did so poorly on the one-leg-stand test and because it was windy at the time.

At some point during the encounter, Deputy Swihart also administered the horizontal gaze nystagmus test (HGN). Although the record does not indicate the precise conclusions drawn from the test, Deputy Swihart testified the results formed part of his basis for probable cause to believe Martin was driving under the influence. Ultimately, Deputy Swihart placed Martin under arrest for DUI, and Martin agreed to take the Intoxilyzer breath test. The Intoxilyzer measured Martin's blood/alcohol content at .235.

Deputy Swihart provided Martin a notice of suspension and certified the findings to the Kansas Department of Revenue (KDR). After an administrative hearing, the hearing officer suspended Martin's license for a year. Martin sought judicial review in the district court, arguing Deputy Swihart did not have reasonable sus-

picion for the traffic stop, lacked probable cause to arrest for DUI, and failed to follow KDHE testing procedures for the Intoxilyzer 5000 because he left the observation room during the deprivation period.

The district court affirmed the suspension of Martin's driving privileges. In its transcribed decision, the court found Deputy Swihart had reasonable suspicion to conduct the traffic stop as he had witnessed Martin commit two traffic infractions, *i.e.*, failure to use headlamps and failure to use a turn signal. The court also found "an abundance of . . . facts" supported a conclusion that Deputy Swihart had probable cause to believe Martin was under the influence at alcohol at the time of arrest. In addition, noting the Intoxilyzer did not indicate the existence of mouth alcohol or otherwise indicate Martin's breath sample was insufficient, the district court found Deputy Swihart substantially complied with the KDHE protocol in administering the test.

On appeal, Martin argues the district court erred in affirming the KDR's decision to suspend his license. Specifically, Martin maintains Deputy Swihart did not have reasonable suspicion to conduct the traffic stop, did not have probable cause to arrest Martin for DUI, and failed to comply with the KDHE protocol requiring officers to keep test subjects within their "immediate presence" during the deprivation period.

The State argues the two traffic infractions observed by Deputy Swihart provided justification for the stop, substantial competent evidence supported the district court's finding that reasonable grounds existed for Martin's arrest, and Deputy Swihart substantially complied with the KDHE "immediate presence" requirement.

*Standard of review*

A district court exercises de novo review over a KDR decision to suspend an individual's driver's license. *Nickelson v. Kansas Dept. of Revenue*, 33 Kan. App. 2d 359, 362, 102 P.3d 490 (2004). This court reviews the district court's decision under a substantial competent evidence standard. 33 Kan. App. 2d at 362. Substantial evidence is that which possesses both relevance and substance and

which furnishes a substantial basis of fact from which the issues can reasonably be resolved. 33 Kan. App. 2d at 362. When interpreting a statute, this court's review is unlimited. *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003).

*Reasonable suspicion*

"Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand of the name, address of such suspect and an explanation of such suspect's actions." K.S.A. 22-2402(1) (codification of the United State's Supreme Court's ruling in *Terry v. Ohio*, 392 U.S. 1, 24, 30-31, 20 L. Ed. 2d 889, 88 S. Ct. 1868 [1968]). "In order to justify a further detention for questioning on matters not related to the original stop, the officers must have reasonable suspicion that the individual has committed, is committing, or is about to commit some other crime." *Nickelson*, 33 Kan. App. 2d at 366 (citing *State v. Schmitter*, 23 Kan. App. 2d 547, 550-52, 933 P.2d 762 [1997]).

K.S.A. 8-1703(a) requires the use of headlights any time from "sunset to sunrise and at any other time, when due to insufficient light or unfavorable atmospheric conditions, person and vehicles on the highway are not clearly discernible at a distance of 1000 feet ahead . . . ."

Martin argues the State failed to prove his alleged failure to use headlamps occurred between sunset to sunrise as required by the statute, and thus could not provide a basis for the stop. Martin further argues his failure to use a turn signal cannot provide a basis for reasonable suspicion, because Deputy Swihart's certification to the KDR did not indicate this reason as a basis for the stop.

We need not consider the deputy's second basis for stopping the vehicle, as the officer's observation of defendant's failure to use headlamps was sufficient standing alone to provide the reasonable suspicion required for the stop. We may take judicial notice that on the date of Martin's arrest, April 28, 2004, sunset occurred prior to 9:20 p.m. in Glasco, Kansas. See K.S.A. 60-409 (judicial notice may be taken of such facts generally known or of such common

notoriety that they cannot reasonably be the subject of dispute). Because it was undisputed that the events leading to Martin's arrest occurred between 9:20 p.m. and 9:50 p.m. on that date, the arresting deputy clearly had a reasonable suspicion that defendant violated K.S.A. 8-1703.

*Probable cause*

Defendant next asserts that Deputy Swihart did not have probable cause to arrest him for DUI.

Probable cause to arrest refers to knowledge of facts and circumstances that would lead a prudent person to believe an individual is committing or has committed a crime. Existence of probable cause is determined from consideration of the information and fair inferences from it which were known to the officer at the time of arrest. *Sullivan v. Kansas Dept. of Revenue*, 15 Kan. App. 2d 705, 707, 815 P.2d 566 (1991). "Probable cause to arrest is that quantum of evidence that would lead a reasonably prudent police officer to believe that guilt is more than a mere possibility." *Campbell v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 430, 431, 962 P.2d 1150, *rev. denied* 266 Kan. 1107 (1998)

Martin claims the odor of alcohol was the only valid factual basis for his DUI arrest. In his brief, Martin also suggests in passing that Deputy Swihart improperly entered his store before detecting the odor. He offers no explanation for this assertion, but cites *State v. Smith*, 243 Kan. 715, 717, 763 P.2d 632 (1988), which holds that the prohibition against warrantless searches extends to an individual's place of business. We note that the district court did not address this issue, although Martin mentioned it in his trial brief.

"A point raised only incidentally in a party's brief but not argued in the brief is deemed abandoned." *Titterington v. Brooke Insurance*, 277 Kan. 888, Syl. ¶ 3, 89 P.3d 643 (2004). Therefore, we decline to address any issue raised by Martin regarding Deputy Swihart's warrantless entry into the store.

Martin also argues Deputy Swihart improperly relied on the results of the HGN test as a basis for probable cause because such results are inadmissible as substantive evidence pursuant to *State v. Witte*, 251 Kan. 313, 329, 836 P.2d 1110 (1992). This court need

not address that issue, however, because Deputy Swihart clearly had probable cause to arrest even without the test results. Indeed, the probable cause basis in this case is just as strong, if not stronger, than that upheld by the Kansas Supreme Court in the principal case relied upon by Martin, *City of Dodge City v. Norton*, 262 Kan. 199, 205, 936 P.2d 1356 (1997).

In *Norton*, an officer received a report of a man believed to be intoxicated causing a disturbance in a trailer park. The officer later noticed the defendant driving a vehicle that matched the description of the suspect's vehicle. The officer followed the defendant as he swayed within his lane and narrowly missed construction barrels. After the defendant parked next to a bar, the officer made contact.

The defendant told the officer he went to the trailer park to see a friend and came back to the bar for "a couple more drinks." 262 Kan. at 201. The officer noticed the defendant's eyes were "a little bit pink around the edges or blood shot." 262 Kan. at 201. During the performance of the heel-to-toe test, the defendant became slightly off-balance and missed a few heel-to-toe touches. The officer subsequently approached the defendant to arrest him and noticed a "faint to moderate, but noticeable, odor of alcohol." 262 Kan. at 202.

Here, Deputy Swihart watched Martin back out of a parking spot across the street from a bar late in the evening. Martin initially did not engage his headlamps, and he failed to pull over upon being summoned to stop by the deputy's emergency lights. Instead, Martin turned right into an alleyway without using his turn signal, drove approximately 50 yards, parked behind his place of business, and walked quickly toward the business' back door. He did not acknowledge Deputy Swihart until the deputy asked him what he was doing and if he had seen the emergency lights.

As Deputy Swihart followed Martin into the store, he noticed Martin was swaying, stumbling, and staggering. Martin admitted he had drunk "five or six" beers, his eyes were bloodshot, and his breath smelled strongly of alcohol. Martin also failed the one-leg-stand test. In addition, Martin admitted he would fail the PBT if he took it.

Moreover, during the encounter, Martin attempted to put cigarettes and candy in his mouth, despite Deputy Swihart's multiple orders not to do so. While Deputy Swihart did not observe Martin weave within his lane or drive erratically, we conclude Martin's actions, his admissions, and the strong odor of alcohol emanating from his breath more than demonstrated probable cause to arrest him for DUI.

*Testing procedures*

Martin had the burden to prove the testing procedures used by Deputy Swihart did not substantially comply with testing procedures promulgated by the KDHE. See *Schoen v. Kansas Dept. of Revenue*, 31 Kan. App. 2d 820, 823, 74 P.3d 588 (2003) (citing K.S.A. 8-1020[h][2][F], [q]). "Substantial compliance" has been defined as " 'compliance in respect to the essential matters necessary to assure every reasonable objective.' " *Burkhart v. Kansas Dept. of Revenue*, Case No. 91,345, unpublished decision filed Sept. 10, 2004 (quoting *Orr v. Heiman*, 270 Kan. 109, 113, 12 P.3d 387 [2000]).

The KDHE testing procedure at issue in this case states: "Keep the subject in your *immediate presence* and deprive the subject of alcohol for 20 minutes immediately preceding the breath test." (Emphasis added.) However, this court has not required strict adherence to the KDHE testing procedures where there is no evidence indicating the Intoxilyzer malfunctioned or the breath sample was contaminated. See *Schoen*, 31 Kan. App. 2d at 823 (court found substantial compliance with requirement that officer check to make sure tubing was properly connected even though officer did not visually do so; court noted that if tubing was not properly connected, the officer would have heard a difference or the machine would not have worked); *State v. Anderson*, Case No. 94,364, unpublished decision filed April 7, 2006 (court found substantial compliance with "immediate presence" requirement even though test subject out of testing officer's view for 2 minutes).

In *Anderson*, the court also found it "significant" that the appellant did not allege "either to the trial court or on appeal, that he either belched, burped, vomited, or otherwise drew fluids up

from his stomach at any time during the deprivation period." Slip op. at 3.

Here, the videotape reveals that Deputy Swihart stepped out of the testing room several times for only a few seconds at a time. Further, although the videotape indicates Martin coughed and cleared his throat several times during the testing period, Martin does not suggest that he belched, burped, vomited, regurgitated, or otherwise introduced substance into his mouth from his stomach during the testing period. In fact, Martin's testimony indicates he did not do so. Martin also testified he did not drink any alcohol during the 20 minutes leading up to the test.

Under these circumstances, we find the testing procedures in this case substantially complied with the KDHE's "immediate presence" requirement.

Affirmed.