NOT DESIGNATED FOR PUBLICATION

No. 114,517

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BRADLEY S. SHAW,
*Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant.*

MEMORANDUM OPINION

Appeal from Marion District Court; STEVEN L. HORNBAKER, judge. Opinion filed July 1, 2016.
Affirmed.

*Donald J. Cooper*, of Kansas Department of Revenue, for appellant.

*Lori L. Lalouette*, of Lalouette Law, LLC, of Hillsboro, for appellee.

Before BUSER, P.J., HILL, J., and WALKER, S.J.

*Per Curiam:* The Department of Revenue brings this appeal because the district court reversed its suspension of Bradley S. Shaw's driving license. The court reversed the suspension based upon the testimony of the police chief who administered the test. The Chief stated unequivocally that due to his training he would visually inspect the mouth of tobacco chewers after he had them spit out their tobacco to ensure that there were no foreign objects in their mouths prior to the required 20-minute alcohol deprivation period just before administering the test.

1

When the video recording of this test revealed that the Chief did not inspect Shaw's mouth after he had Shaw spit out his tobacco, but before administering the test, the district court decided that the Chief had not complied with the testing protocol. And a failure to comply casts a doubt on the accuracy of the breath test. As a result, the court reversed and reinstated Shaw's driving privileges.

Given the state of the record that was before the district court, where the only testimony was the Chief's, who said he was required to do a visual inspection and he failed to do so, we hold the court had no choice but to set aside the test and restore Shaw's driving privileges. Thus, we affirm.

*The Chief investigates a report of a car hitting a fence.*

In January 2013, Peabody Police Chief Bruce Burke was dispatched to investigate a report of a car striking a fence on a piece of residential property. Chief Burke arrested Shaw on suspicion of drunk driving. He took Shaw to the Marion County Jail for a breath test on the Intoxilyzer 8000. The readout from the test was .176. Shaw was given a notice of suspension of his driving license. An administrative hearing officer for the Kansas Department of Revenue affirmed the suspension. Shaw filed a petition for judicial review.

The district court held a bench trial in June 2015. Chief Burke testified that he was certified by the Kansas Department of Health and Environment to operate the Intoxilyzer 8000. He successfully completed an 8-hour training course to obtain the certification. He was trained to follow certain protocols when operating the Intoxilyzer 8000. One of the main protocols is to keep the subject in the officer's presence for 20 minutes to make sure the subject does not ingest alcohol during the 20-minute period. This is known as the 20-minute deprivation period.

2

Chief Burke testified that to ensure the subject does not have alcohol in his mouth, "[v]isually, we're supposed to check the mouth and look in the mouth." The visual inspection is to ensure there are no foreign objects in the mouth. If there are foreign objects in the subject's mouth, then he makes sure the subject gets the foreign objects out of the subject's mouth. Then, he normally visually rechecks to make sure everything is gone. He testified that "visual" means "[u]sually I'm standing right beside the person." He did not know how a foreign object would affect the test result—"It's just part of the things that we're supposed to do."

Chief Burke also testified that he was to keep the subject in his presence and not let the subject belch or vomit or the 20-minute deprivation period would have to be restarted. He would be able to hear a burp or belch because the room is small. It varies whether he asks the person if they belched or regurgitated.

Chief Burke recalled Shaw having chewing tobacco in his mouth. He testified he had Shaw remove the chewing tobacco but did not have him rinse his mouth afterward. He thought he visually inspected Shaw's mouth to make sure there was no residue left. He testified that there could be residue from chewing tobacco, and that is why he would normally recheck the subject's mouth. Shaw did not indicate he had any residue in his mouth and Chief Burke did not ask Shaw if he had any residue left. Chief Burke did not hear Shaw burp, belch, or vomit and Shaw did not indicate that he had burped or belched.

After Chief Burke's testimony, the district court watched a video of Shaw's Intoxilyzer 8000 test. The video showed Chief Burke standing across the room from Shaw. While getting out his flashlight, Chief Burke asked Shaw if he had anything in his mouth. Shaw responded that he had Copenhagen in his mouth. Chief Burke told him to spit it out and pointed the flashlight at the trashcan next to Shaw. Shaw spit into the trashcan and put his hand up to his mouth several times to scoop out the chewing tobacco. Still across the room, Chief Burke then started the deprivation period.

The district court reversed and reinstated Shaw's driving privileges. The district court stated,

> "if that's part of the training, . . . I guess I could infer that's in the manual, that he do a visual inspection. . . . [T]hat's an indicia of the Court; that if he was trained to do it . . . that is part of the . . . Intoxilyzer 8000 requirements. And I know I'm . . . pushing the envelope there. So there's your app[eal]."

The Kansas Department of Revenue appeals, claiming that there is no requirement that officers visually inspect a subject's mouth before administering the Intoxilyzer 8000 breath test.

*Substantial competent evidence supports the findings of the district court.*

The fundamental rules we must follow in order to resolve this appeal are well established. Following a new trial in the district court of an administrative driving license suspension case, we look to see if the district court's decision was supported by substantial competent evidence. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). Substantial competent evidence means such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 514, 242 P.3d 1179 (2010).

In making this determination, we do not reweigh conflicting evidence, make witness credibility determinations, or redetermine questions of fact. *Mitchell v. Kansas Dept. of Revenue*, 32 Kan. App. 2d 298, 301, 81 P.3d 1258 (2004). Whether substantial competent evidence exists is a question of law. *Smith*, 291 Kan. at 514.

We are mindful of the procedures that all must follow in deciding on whether a license is suspended. An administrative hearing challenging the suspension of driving

4

privileges is a civil proceeding governed by K.S.A. 2013 Supp. 8-1020. Prehearing discovery is limited. K.S.A. 2013 Supp. 8-1020(e). The issues that arise at the hearing are limited. Among certain other things, a licensee may challenge whether:

"(D)    the testing equipment used was certified by the Kansas department of health and environment;

"(E)    the person who operated the testing equipment was certified by the Kansas department of health and environment;

"(F)    the testing procedures used substantially complied with the procedures set out by the Kansas department of health and environment;" K.S.A. 2013 Supp. 8-1020(h)(2).

It is important to note that at the hearing or on review by the district court, a certified operator of a breath testing device shall be competent to testify regarding the proper procedures to be used in conducting the test. K.S.A. 2013 Supp. 8-1020(i).

The licensee has the burden of proof by a preponderance of the evidence. K.S.A. 2013 Supp. 8-1020(k). Only evidence of the following seven categories is admissible:

(1)    the documents listed in K.S.A. 2013 Supp. 8-1020(e);

(2)    the testimony of the licensee;

(3)    the testimony of the certifying officer;

(4)    the testimony of any witness present at the time of the certification;

(5)    affidavits from other witnesses;

(6)    documents to show the existence of a medical condition by the licensee; and

(7)    a video or audio tape record of the events. K.S.A. 2013 Supp. 8-1020(l).

These restrictions do not apply in a review of the administrative action by the district court and the district court's review is de novo. K.S.A. 2013 Supp. 8-1020(p). At

5

this hearing, the licensee bears the burden to show the agency action should be set aside. K.S.A. 2013 Supp. 8-1020(q).

Shaw focused his attack on the testing procedures. He contends that what happened here failed to substantially comply with the procedures set out by the Kansas Department of Health and Environment under K.S.A. 2013 Supp. 8-1020(h)(2)(F).

In an earlier case, this court has defined substantial compliance as """compliance in respect to the essential matters necessary to assure every reasonable objective.""" *Martin v. Kansas Dept. of Revenue*, 38 Kan. App. 2d 1, 9, 163 P.3d 313 (2006). The substantial compliance standard requires the petitioner in a driving license suspension case to demonstrate a violation of the Department testing procedures that strikes at the purpose for the protocol and casts doubt upon the reliability of the subsequent test results. This must be determined on a case-by-case basis. *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 122-23, 200 P.3d 496 (2009). The statute does not require the licensee to provide affirmative evidence that the Intoxilyzer malfunctioned or the breath sample was contaminated. 41 Kan. App. 2d at 121.

In response, the Department contends there was no evidence in the record that the Intoxilyzer 8000 requires a visual inspection of a subject's mouth prior to a breath test, noting that the manufacturer's manual for the Intoxilyzer 8000 was not on record.

But Chief Burke testified that he was trained to visually inspect a subject's mouth to ensure there are no foreign objects in the mouth. Chief Burke was also trained on using the Intoxilyzer 8000. K.S.A. 2013 Supp. 8-1020(i) provides that "[a] certified operator of a breath testing device shall be competent to testify regarding the proper procedures to be used in conducting the test." Chief Burke was a certified operator of the Intoxilyzer 8000. Therefore, his testimony was substantial competent evidence of the proper testing procedures.

6

The Department contends that Chief Burke's testimony that Shaw did not burp, belch, or vomit, or consume any alcohol during the 20-minute deprivation period created a prima facie case that there was no foreign substance in Shaw's mouth prior to the Intoxilyzer 8000 test. It cites *City of Shawnee v. Gruss*, 2 Kan. App. 2d 131, 133, 576 P.2d 239 (1978), an appeal of a municipal driving under the influence conviction, as support. Indeed, the *Gruss* court stated:

> "Considering next the appellant's contention that the officer did not inspect his mouth for foreign substance, we find the argument to be without merit. The officer's testimony that the appellant did not belch, regurgitate or ingest any substance during the twenty-minute observation period creates a prima facie showing that he had no foreign substance in his mouth at the time of testing. The appellant presented no evidence to rebut that showing." 2 Kan. App. 2d at 133.

*Gruss* differs from this case. The big question in *Gruss* was whether the police had observed Gruss for 20 minutes. The police said they did but Gruss said he was observed for only 10 minutes. The district court believed the police. This court held that the officer's statement was substantial competent evidence that supported the district court's finding. But we note there was no claim in *Gruss* that he had anything in his mouth prior to testing—just that the officer did not check his mouth. That makes a difference. Here, Shaw obviously had chewing tobacco in his mouth before the test and Chief Burke testified that it was his practice to visually inspect a subject's mouth to ensure there was no residue.

A recent case is more persuasive. In *State v. Campas*, No. 110,790, 2014 WL 4082408, *5-7 (Kan. App. 2014) (unpublished opinion), a panel of this court held that substantial evidence supported the district court's finding that the Department's protocol was violated based on the trooper's testimony that the protocol required a subject's mouth be free of foreign matter. Like here, Campas had chewing tobacco in his mouth prior to the test and the trooper did not ensure that all foreign matter had been removed from his

7

mouth. The district court suppressed the results of the breath test and the panel affirmed. 2014 WL 4082408 at *5-7.

In a follow-up argument, the Department cites *State v. Hosler*, No. 108,111, 2013 WL 2321191 (Kan. App.) (unpublished opinion), *rev. denied* 298 Kan. 1206 (2013), in support of its contention that the Department protocols do not require a visual inspection of a subject's mouth. Hosler challenged the evidentiary foundation of his Intoxilyzer 8000 breath test because the officer did not inspect Hosler's mouth before the test. The officer noticed that Hosler had chewing tobacco in his mouth and requested him to remove it. He saw Hosler put his finger in his mouth and remove the tobacco. The officer spent almost an hour talking to Hosler and did not see evidence of anything in Hosler's mouth. Hosler did not belch, regurgitate, or ingest any substance during the deprivation period.

The district court found that there was no protocol requirement that the officer look inside Hosler's mouth based on the Intoxilyzer 8000 protocol document in the record. Hosler argued it was implied that the officer was required to check the subject's mouth. The district court allowed admission of the test result. Then on appeal, Hosler for the first time argued that the breath alcohol training manual required that the officer check his mouth before the deprivation period. He attached a page from the manual as an attachment to his brief. But this court did not consider the attachment because it was not part of the record, and the court affirmed. 2013 WL 2321191 at *1-4.

*Hosler* can be distinguished from this case based on the record. Here, Chief Burke's testimony was evidence that the testing requirements of the Intoxilyzer 8000 included a visual inspection of the subject's mouth.

Two other cases are instructive. In *State v. Perry*, No. 93,830, 2005 WL 2076580, at *2 (Kan. App. 2005) (unpublished opinion), this court upheld a district court's finding that the Intoxilyzer 5000 procedures required a visual inspection of the subject's mouth

8

and the suppression of the test result. The officer testified that he believed the protocol required him to make certain the subject had nothing in his or her mouth prior to the test. He testified that the procedure he personally employed was to visually inspect the subject's mouth if he suspected the person had something in his or her mouth. The officer did not check Perry's mouth. *Perry* was a criminal case in which the State had the burden to lay a proper foundation for the test and the standard was strict compliance. 2005 WL 2076580, at *1-2.

In *State v. Hamilton*, 46 Kan. App. 2d 31, 34, 259 P.3d 744 (2011), this court held that in the absence of any evidence to the contrary, a conclusory statement by a certified officer that he followed the breath-testing protocol was sufficient foundation for admission of the test results in a criminal case. In *Hamilton*, there was "no testimony whatsoever that any aspect of the protocol was not followed." 46 Kan. App. 2d at 34; see *State v. Lukens*, No. 102,343, 2010 WL 481281 (Kan. App. 2010) (unpublished opinion); *State v. Prater*, No. 101,552, 2010 WL 2044925 (Kan. App.) (unpublished opinion), *rev. denied* 290 Kan. 1190 (2010). Here, in contrast, there was specific video evidence that showed Chief Burke did not follow the procedure that he testified to.

Administrative cases have also addressed this issue. In *Muller v. Kansas Dept. of Revenue*, No. 110,757, 2014 WL 2871407 (Kan. App. 2014) (unpublished opinion), the licensee contended that the testing officer did not substantially comply with the testing protocol because the officer failed to inspect his mouth. The court found that the Intoxilyzer protocol was silent on the issue of foreign objects in a subject's mouth. The officer testified that he saw the subject remove tobacco from his mouth and never noticed any additional chewing tobacco.

The testimony was disputed. The district court found the officer more credible than the licensee. On review, this court affirmed the license suspension. 2014 WL 2871407, at *7. The court also noted that it was not aware of a requirement that the

9

officer follow the manufacturer's protocol as a condition of admission of the test result. Rather, the officer may rely entirely on the Department's statement of the required procedures. 2014 WL 2871407, at *8.

Here, in contrast, Chief Burke testified that the procedure includes a visual inspection of the subject's mouth to ensure there is no tobacco residue. That is the record before this court, which is distinct from the record in other cases.

Basically, the Department is arguing that Chief Burke did not know what he was saying. The Department asks us to ignore his testimony in the record. Thus, we are to weigh the evidence. This we cannot do. See *Mitchell*, 32 Kan. App. 2d at 301.

Under the facts of this case, like in *Campas*, Chief Burke's noncompliance with the testing procedures strikes at the purpose for the protocol and casts doubt upon the reliability of the subsequent test results. The district court could not have reasonably ruled otherwise.

Affirmed.