NOT DESIGNATED FOR PUBLICATION

No. 117,402

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LINDA BERNING,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.


MEMORANDUM OPINION

Appeal from Wichita District Court; MICHAEL L. QUINT, Judge. Opinion filed August 17, 2018. Remanded with directions.

*John M. Lindner*, of Lindner, Marquez & Koksal, of Garden City, for appellant.

*John D. Shultz*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before GARDNER, P.J., GREEN and HILL, JJ.

PER CURIAM: Linda Berning appeals the suspension of her driving privileges following a blood test indicating she was driving under the influence. She contends the arresting officer was without the reasonable suspicion required by K.S.A. 2013 Supp. 8-1012 to request that she submit to a preliminary breath test and, without the PBT result, there were not reasonable grounds to indicate she was driving under the influence and to subject her to further testing. The State contends that whether the officer lacked reasonable suspicion to request a PBT is not one of the issues that may be decided in an administrative suspension hearing under K.S.A. 2015 Supp. 8-1020(h) and the exclusionary rule does not apply in administrative cases. Because the district court's

1

findings of fact are erroneous, apparently pulled from one of the other cases the court heard on the same day, we remand the case for appropriate fact-finding.

In April 2014, at around 10 p.m. on a Sunday, Deputy Kristopher Casper saw a vehicle with its lights on and door open, parked at the back of the Bluebird bar. He believed the vehicle belonged to Linda Berning, who ran the Bluebird. He was not concerned at that time. He had met Berning before. But he knew the Bluebird was closed on Sundays. A short time later, Deputy Casper saw the vehicle leave the Bluebird and drive approximately 100 yards down the road to a neighboring business, Heartland Mills. The vehicle stopped by the front doors of Heartland Mills. Deputy Casper did not observe the vehicle violate any traffic laws, but he was concerned about "a possibility of criminal trespass." He did not know why the vehicle was there and if Berning was driving it. Heartland Mills was closed on Sundays. He had seen the vehicle with its lights on and its door open and, in his experience, "sometimes people will smash and grab in that manner." He pulled into the Heartland Mills lot to see if it was Berning.

Deputy Casper got out of his vehicle and approached Berning. Berning said she was dropping off a Bluebird menu. The deputy found that suspicious because, as far as he knew, the Bluebird did not serve food. But there were menus in her vehicle. The deputy continued the encounter because he smelled the odor of alcohol and noticed that Berning's eyes were bloodshot. He asked her if she had an I.D. Berning said "yes" and then stared at the deputy. He then asked her if he could see it. After "quite a while," Berning found the ID in her vehicle and gave it to him. Her vehicle was very messy.

Deputy Casper asked Berning if she had been drinking and she replied, "No, yes, maybe." She repeated, "No, yes, maybe." She said she was good to drive, but she would go back to the Bluebird and stay the night there. She said she had a "really bad day" because a friend of hers may have cancer. Deputy Casper reminded Berning that they had talked before about how she was not supposed to be drinking in the Bluebird on a

2

Sunday. Berning said she was not *serving* alcohol to anyone. Berning did not specifically say she drank alcohol that night. But Deputy Casper thought that it was implied.

Deputy Casper asked Berning if she would take field sobriety tests, but she evaded the question and eventually declined. The deputy asked her to take a PBT. He told her it was a traffic infraction to refuse the PBT. She initially declined. He said that due to her "bloodshot eyes [and] the intense smell of alcohol," he believed she was intoxicated and he was going take her to the station for a blood test. Berning then agreed to take the PBT. She believed at that point it was futile to refuse. The PBT indicated her breath-alcohol concentration was over the legal limit of .08. Deputy Casper then arrested her. She was given a blood test, which indicated her blood alcohol content was .10. During the encounter, Berning was polite and cooperative.

Deputy Casper filled out a DC-27 form listing the following grounds for his belief that Berning was driving under the influence of alcohol:

- odor of alcohol;
- slurred speech;
- bloodshot eyes;
- difficulty communicating;
- poor balance or coordination;
- she stated she had consumed alcohol; and
- that she failed a PBT.

Berning's speech was not slurred on the video of the encounter, nor did she have difficulty communicating. She is only captured walking briefly on the video, so it is not determinative of her balance or coordination.

3

Deputy Casper gave Berning a notice of suspension of her driving license. After Berning requested a hearing, an administrative hearing officer for the Kansas Department of Revenue affirmed the suspension. Berning filed a petition for judicial review in Wichita County District Court. In her petition for judicial review, Berning claimed that the deputy:

- detained her without reasonable suspicion that she was committing or had committed a crime;
- did not have reasonable suspicion to request a preliminary breath test;
- obtained the PBT result through coercion by telling her he would take her to jail for a blood draw if she refused;
- did not have reasonable grounds to believe she was DUI; and
- arrested her without probable cause and, therefore, he did not have authority to request a blood test.

The district court held a bench trial May 5, 2016, and Berning and Deputy Casper testified. The district court took the matter under advisement and later issued a written decision. In the written journal entry, the court stated that three different trials were held on the same day, in which the KDOR was the defendant and Deputy Casper was the primary witness called to testify. The court then noted that it decided the first case from the bench and in its ruling it noted that Deputy Casper "specifically and intentionally lied to Mr. Winter with the specific intent to prompt the plaintiff in that case to make self-incriminatory admissions or take actions contrary to his best interest." In each of the other cases, Deputy Casper again testified he intentionally lied to or misled the petitioner to act in a manner contrary to his or her interests. The court continued:

> "The Court acknowledges the current appellate court authority authorizing an officer's right to use deceit to further investigations. A habitual tendency to lie raises a

4

character issue. If any quality should be cherished by those who seek truth, a person who does not lie has to be the greatest joy.

"Each case had its own CD of video/audio recording of at least part of what [led] to the charges being brought. In this case, the CD did not show the plaintiff driving but then did show manual dexterity tests prior to charges being issued. The manual dexterity tests were on tape but in the dark and not easily seen.

"If the testimony of the manual dexterity tests is accurate, there is evidence of a possible effect of alcohol on the plaintiff. With the burden in this matter only being proof by a preponderance of evidence rather than beyond a reasonable doubt, the testimony of Deputy Casper carries the day of preponderance of evidence leading to the blood test resulting in more than .08."

"With the evidence supporting probable cause," the court upheld the suspension of Berning's driving license.

Berning filed a motion for reconsideration, noting that the court's reasoning in the first case seemed to carry over to her case. She argued that the deputy's dishonesty was not the sole basis of her claim. Rather, she also claimed that the deputy did not have reasonable grounds to believe she was DUI. He requested a PBT without reasonable suspicion required by K.S.A. 2013 Supp. 8-1012. She did not commit any traffic violations, admit to drinking, or take any field sobriety tests. She asked that the PBT results be suppressed. She argued that the arrest was without probable cause and therefore invalid. The court issued a written denial of the motion stating:

"After considering the argument made, no new or insightful factual insights or considerations were presented to the Court requiring or allowing a reversal of the Court's prior ruling.

"Although the Court dislikes the technique and abusive attitude of the officer, his actions were within the bounds of what prior appellate decisions have permitted in investigating suspected driving under the influence. Plaintiff's Petition is denied."

5

Berning timely appeals. On appeal, Berning primarily argues that the deputy lacked reasonable suspicion required by K.S.A. 2013 Supp. 8-1012 to request that she submit to a PBT.

*A review of the law is helpful.*

The Kansas implied consent statute limits when an officer may ask a driver to take a PBT:

> "A law enforcement officer may request a person who is operating or attempting to operate a vehicle within this state to submit to a preliminary screening test of the person's breath or saliva, or both, if the officer has *reasonable suspicion* to believe the person has been operating or attempting to operate a vehicle while under the influence of alcohol or drugs or both alcohol and drugs." (Emphasis added.) K.S.A. 2013 Supp. 8-1012(b).

According to the statute, refusal to take the PBT is a traffic infraction. K.S.A. 2013 Supp. 8-1012(d). But this court held that provision unconstitutional in *State v. Robinson*, 55 Kan. App. 2d 209, 222-23, 410 P.3d 923 (2017).

If a driver agrees to submit to a PBT, then the officer can use the result of the PBT to determine whether to arrest the driver and request an evidentiary breath, blood, or urine test under K.S.A. 2013 Supp. 8-1001. K.S.A. 2013 Supp. 8-1012(d). The PBT results are only admissible to determine the validity of the arrest or the validity of the officer's request that the driver submit to a test under K.S.A. 2013 Supp. 8-1001. In other words, the PBT result is not admissible to prove the driver was driving under the influence in a criminal prosecution.

6

Under K.S.A. 2013 Supp. 8-1001(b), the officer must have "reasonable grounds" to believe the driver was under the influence of alcohol to ask the driver to submit to an evidentiary breath, blood, or urine test:

> "A law enforcement officer shall request a person to submit to a test . . . [i]f, at the time of the request, the *officer has reasonable grounds to believe* the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both . . . *and* . . . *[t]he person has been arrested* or otherwise taken into custody for any violation of any state statute, county resolution or city ordinance." (Emphases added). K.S.A. 2013 Supp. 8-1001(b)(1)(A).

If the driver fails the test, the KDOR will suspend his or her driving license for a time period based on how many prior occurrences he or she has. K.S.A. 2013 Supp. 8-1014.

The driver may request an administrative hearing challenging the suspension of his or her driving privileges. Such hearing is a civil proceeding that is governed by K.S.A. 2015 Supp. 8-1020. When the officer certifies that the driver failed an evidentiary blood test, as here, the scope of the hearing is limited to whether:

> "(A) A law enforcement officer had reasonable grounds to believe the person was operating a vehicle while under the influence of alcohol or drugs, or both, or had been driving a commercial motor vehicle, as defined in K.S.A. 8-2,128, and amendments thereto, while having alcohol or other drugs in such person's system or was under the age of 21 years and was operating or attempting to operate a vehicle while having alcohol or other drugs in such person's system;
> "(B) the person was in custody or arrested or was involved in a vehicle accident or collision resulting in property damage, personal injury or death;
> "(C) a law enforcement officer had presented the person with the oral and written notice required by K.S.A. 8-1001, and amendments thereto;
> "(D) the testing equipment used was reliable;
> "(E) the person who operated the testing equipment was qualified;
> "(F) the testing procedures used were reliable;

"(G) the test result determined that the person had an alcohol concentration of .08 or greater in such person's blood; and

"(H) the person was operating or attempting to operate a vehicle." K.S.A. 2015 Supp. 8-1020(h)(3).

This list of issues is exclusive. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 631, 176 P.3d 938 (2008), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015).

The district court reviews the agency action de novo. K.S.A. 2015 Supp. 8-259; K.S.A. 2015 Supp. 8-1020(p). The licensee has the burden to show that the agency action should be set aside. K.S.A. 2015 Supp. 8-1020(q). The district court's decision is then reviewable by the appellate courts "as in other civil cases." K.S.A. 77-623; K.S.A. 2015 Supp. 8-1020(p).

Appellate courts review whether the district court's decision was supported by substantial competent evidence. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). Substantial competent evidence means "'such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.'" *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 514, 242 P.3d 1179 (2010). In determining whether the trial court's decision was supported by substantial competent evidence, appellate courts do not reweigh conflicting evidence, make witness credibility determinations, or redetermine questions of fact. *Mitchell v. Kansas Dept. of Revenue*, 32 Kan. App. 2d 298, 301, 81 P.3d 1258 (2004). The court reviews the ultimate legal conclusion regarding whether the officer had reasonable grounds de novo. *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, 415, 233 P.3d 286 (2010). When interpreting a statute, the appellate court's review is unlimited. *Martin v. Kansas Dept. of Revenue*, 38 Kan. App. 2d 1, Syl. ¶ 3, 163 P.3d 313 (2006).

Two problems arise in this appeal. First, the district court's factual findings were erroneous and second, whether the PBT is admissible in an administrative suspension case if the deputy lacked reasonable suspicion as required by the statute.

The court made only two findings of fact—that Berning failed manual dexterity tests and the deputy lied. The first finding of fact is erroneous (no manual dexterity tests were given) and the second poses a credibility question about the deputy's testimony. To determine whether the deputy had reasonable suspicion or reasonable grounds that Berning was DUI, this court would have to make findings of fact based on disputed evidence, with the district court having called the deputy's credibility into question, and with a video that contradicts two of the indicators of impairment noted by the deputy.

Berning contends that the district court's decision must be reversed because it is based entirely on the manual dexterity tests which were not performed. The KDOR argues that Berning failed to preserve this issue for review by objecting below to the inadequate findings of fact.

Supreme Court Rule 165 (2018 Kan. S. Ct. R. 215) imposes on the district court the primary duty to provide adequate findings of fact and conclusions of law on the record to explain the court's decision on contested matters. A party, however, must object to inadequate findings and conclusions to preserve an issue for appeal. Such objections necessarily give the district court an opportunity to correct any alleged inadequacies. See *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 930 (2016).

When no objection is made to a district court's inadequate findings of fact or conclusions of law, an appellate court can presume the district court found all facts necessary to support its judgment. *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 (2015). Where, however, the record does not support such a presumption and the lack of specific findings precludes meaningful review, an appellate court can consider a remand.

See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012).

Berning filed a motion for reconsideration noting that the court's reasoning in the *Winter* case carried over to her case and she took no field sobriety tests. Under the circumstances, this was likely sufficient to alert the district court to the problem with its factual findings and preserve the issue for review.

We cannot presume the district court found all the facts necessary when its journal entry was about a different case. No manual dexterity tests were performed in this case. The district court noted that it heard three cases on the same day involving the KDOR as a party and Deputy Casper as the primary witness. It appears from the court's journal entry that the court did not have the facts of Berning's case in mind when it ruled on her case. Moreover, the court's denial of Berning's motion to reconsider did not put the matter to rest—it again only referred to the deputy's dishonesty and not to any facts specific to Berning's case. Therefore, we remand the case for the district court to make findings of fact.

Remanded with directions.