(200 P.3d 496)
No. 99,372

BILLY J. MITCHELL, *Appellant*, v. KANSAS DEPARTMENT OF REVENUE; *Appellee*.

Opinion filed February 13, 2009.

*Richard L. Hines*, of Hines & Ahlquist, P.A., of Erie, for appellant.

*James G. Keller*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before HILL, P.J., MALONE and CAPLINGER, JJ.

MALONE, J.: Billy J. Mitchell appeals the district court's decision upholding the Kansas Department of Revenue's (KDR) administrative suspension of his driving privileges for failing a breath test. The sole issue is whether the procedures used for the breath test substantially complied with the procedures set out by the Kansas Department of Health and Environment (KDHE). Mitchell contends that the testing officer failed to comply with the portion of the KDHE protocol that requires an officer to "[k]eep the subject in [the officer's] immediate presence and deprive the subject of alcohol for 20 minutes immediately preceding the breath test." Under the facts of this case, where the district court found that Mitchell was alone in the restroom out of the officer's presence for a couple of minutes and that Mitchell consumed a cup of water sometime during the deprivation period, the testing procedures failed to substantially comply with the KDHE protocol. Accordingly, we reverse the district court's decision upholding the suspension of Mitchell's driving privileges.

On May 29, 2006, Mitchell was arrested for driving under the influence of alcohol (DUI) and transported to the Neosho County Sheriff's Department for testing. In preparation for the evidentiary breath test, Deputy Brad DeMerritt checked Mitchell's mouth and then began the mandatory 20-minute observation period at 3:19 p.m. DeMerritt administered the breath test at 3:44 p.m., and the Intoxilyzer test printout indicated a breath-alcohol concentration of .194. DeMerritt certified that Mitchell failed the breath test,

and he served Mitchell with a notice of suspension of his driving privileges.

On June 5, 2006, Mitchell requested an administrative hearing on the suspension of his driving privileges. The administrative hearing was held on September 19, 2006. After considering the testimony of Mitchell and DeMerritt, the hearing officer affirmed the suspension of Mitchell's driving privileges, issuing an order on October 26, 2006.

On November 3, 2006, Mitchell filed a petition for judicial review, arguing multiple errors in the administrative suspension proceedings. Following a pretrial conference, the district court limited the issue to whether "the testing procedures used substantially compl[ied] with the procedure set out by the Kansas Department of Health and Environment."

The district court held a bench trial on October 14, 2007. At the hearing, Mitchell testified that about 10 minutes into the observation period, he requested and received a cup of water from a female reserve officer. Mitchell testified that after drinking the water, he received permission from DeMerritt to use the restroom. Because the female reserve officer was present, Mitchell was allowed to close the door of the restroom. Mitchell testified that he was alone in the restroom for 2 to 4 minutes. While he was in the restroom, Mitchell did not vomit or do anything other than use the toilet and wash his hands. When asked whether he belched or burped, Mitchell testified, "I may have, but I don't honestly remember."

DeMerritt testified that he did not have a very specific recollection of Mitchell's 20-minute observation period. DeMerritt recalled that Mitchell went to the restroom, but DeMerritt had no independent recollection of the amount of time Mitchell was in the restroom or whether this was during the 20-minute observation period. DeMerritt testified that he would not have allowed Mitchell to drink water during the observation period because he recognized that this violated KDHE protocol. However, DeMerritt could not refute whether the female reserve officer may have allowed Mitchell to have a cup of water.

On August 15, 2007, the district court issued a memorandum decision and order upholding the administrative suspension of Mitchell's driving privileges. The district court essentially found the facts in Mitchell's favor. The district court specifically found that Mitchell was not in DeMerritt's immediate presence for a continuous period of 20 minutes preceding the breath test. The district court also found that Mitchell consumed a cup of water during the deprivation period. The district court focused on the fact that Mitchell candidly admitted that he had no recollection of belching or burping during the deprivation period. Had Mitchell testified that he belched or burped while he was alone in the bathroom, the district court acknowledged that the testing procedure might have been compromised. Without such evidence, the district court found that Mitchell did not meet his burden of proving that the testing procedures were not in substantial compliance with the KDHE requirements. The district court concluded that "even though [Mitchell] was out of the officer's presence for a couple of minutes and may have consumed a cup of water, the testing procedures used substantially complied with the procedures set out by KDHE." Mitchell timely appeals.

The sole issue in this appeal is whether the district court properly determined that the procedures used for Mitchell's breath test substantially complied with the KDHE requirements. Mitchell argues that the district court improperly interpreted "substantial compliance" to require Mitchell to prove that the violations of the KDHE protocol in his case contaminated the breath sample or otherwise produced an invalid test result.

Once a law enforcement officer has certified a test refusal or test failure under the Kansas implied consent statutes, K.S.A. 8-1001 *et seq.*, and the KDR has notified the driver of his or her license suspension, the driver may request an administrative hearing to challenge the suspension. K.S.A. 8-1002(d); K.S.A. 8-1020(a); *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 630, 176 P.3d 938 (2008). In the case of a test failure, the statutory scheme limits the matters the hearing officer may consider, which includes a determination of whether "the testing procedures used *substantially complied* with the procedures set out by the Kansas

department of health and environment." (Emphasis added.) K.S.A. 8-1020(h)(2)(F). At the administrative hearing, the driver bears the burden of proving, by a preponderance of the evidence, that the facts supporting the certification of the test results were false or insufficient to sustain the driver's license suspension. K.S.A. 8-1020(k); *Martin*, 285 Kan. at 631.

If the administrative suspension is affirmed by the hearing officer, the driver may petition the district court for judicial review of the administrative decision. K.S.A. 8-259; K.S.A. 8-1020(o). The district court conducts a de novo review of the KDR's decision, but the petitioner bears the burden of establishing error by the administrative agency. K.S.A. 8-1020(p), (q); *Martin*, 285 Kan. at 631.

In reviewing a district court's ruling in a driver's license suspension case, an appellate court typically applies a substantial competent evidence standard. *Schoen v. Kansas Dept. of Revenue*, 31 Kan. App. 2d 820, 822, 74 P.3d 588 (2003). Substantial evidence is evidence possessing relevance and substance that furnishes a basis of fact from which the issues can reasonably be resolved. In other words, substantial evidence is legal and relevant evidence sufficient to reasonably support the conclusion reached by the district court. 31 Kan. App. 2d at 822. However, where the issue raised in a driver's license suspension case involves strictly a legal question, an appellate court's review is unlimited. *Martin*, 285 Kan. at 629. Interpretation of a statute is a question of law over which an appellate court has unlimited review. *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, 1031, 181 P.3d 549 (2008).

Mitchell contends DeMerritt failed to comply with the portion of the KDHE protocol that requires an officer to "[k]eep the subject in [the officer's] immediate presence and deprive the subject of alcohol for 20 minutes immediately preceding the breath test." Mitchell also contends DeMerritt failed to comply with the portion of the KDHE protocol that states: "During the alcohol deprivation period: Do not allow subject to eat, drink, smoke, or chew gum, or to have any oral intake of anything." Mitchell notes the district court specifically found that he was alone in the restroom for 2 to 4 minutes and that he consumed a cup of water during the dep-

rivation period. Mitchell argues that such deviation from the required protocol was sufficient to undermine confidence in the test certification.

The purpose of the 20-minute alcohol deprivation period is for the testing officer to make sure there is no residual alcohol in the subject's mouth at the time of the breath test. DeMerritt testified that in the 20 minutes before a test, officers are "supposed to observe the person; make sure they don't belch, vomit, cough, [and] of course, introduce anything orally, and we're not supposed to let them out of our sight." Clearly, the facts adopted by the district court demonstrated that DeMerritt failed to strictly comply with the KDHE protocol. However, in a driver's license suspension case challenging whether the breath testing procedures used by the officer complied with the procedures set out by the KDHE, substantial compliance is the standard, and strict compliance with the KDHE testing procedures is not required. K.S.A. 8-1020(h)(2)(F); *Schoen*, 31 Kan. App. 2d at 823.

In arguing that DeMerritt substantially complied with the approved procedures, the KDR relies on *Martin v. Kansas Dept. of Revenue*, 38 Kan. App. 2d 1, 163 P.3d 313 (2006). In *Martin*, the petitioner was arrested for DUI and subsequently failed a breath test. During the 20-minute observation period, the testing officer stepped out of the room several times but only for a brief period of time on each occasion. A videotape which captured the entire observation period was admitted as evidence at the driver's license suspension hearing. Although the videotape indicated that the petitioner coughed and cleared his throat several times during the testing period, there was no evidence that the petitioner belched, burped, vomited, regurgitated, or otherwise introduced substance into his mouth from his stomach during the testing period. In fact, the petitioner testified that he did not do so. The petitioner also testified that he did not drink any alcohol during the 20 minutes leading up to the test.

In upholding the petitioner's driver's license suspension, the court found that the petitioner had the burden to prove the testing procedures did not substantially comply with the KDHE protocol. The court noted that substantial compliance has been defined as

" ' "compliance in respect to the essential matters necessary to assure every reasonable objective." ' " 38 Kan. App. 2d at 9. The court further noted that strict adherence to the KDHE testing procedures has not been required "where there is no evidence indicating the Intoxilyzer malfunctioned or the breath sample was contaminated." 38 Kan. App. 2d at 9. The court relied upon the fact that the observation period was videotaped, there was no evidence that the petitioner belched, burped, vomited, or regurgitated during the testing period, and these facts were confirmed by the petitioner's testimony. Under these circumstances, the court concluded that the testing procedures substantially complied with the KDHE's " 'immediate presence' " requirement. 38 Kan. App. 2d at 10.

In another case, *State v. Anderson*, No. 94,364, unpublished opinion filed April 7, 2006, the defendant challenged his DUI conviction on the ground that the trial court erred in admitting the breath test result into evidence. During the 20-minute observation period, the testing officer permitted the defendant to use the restroom, accompanied by another officer. The defendant returned from the restroom approximately 2 minutes later. Prior to administering the breath test, the testing officer asked the defendant if he had belched, burped, vomited, or brought any fluids up from his stomach at any time during the deprivation period. The defendant indicated that he had not done so.

On appeal, the court affirmed the defendant's DUI conviction and found substantial compliance with the " 'immediate presence' " requirement even though the defendant was out of the testing officer's view for 2 minutes. In doing so, the court found it significant that the defendant admitted that he never belched, burped, vomited, or otherwise drew fluids up from his stomach at any time during the deprivation period. Slip op. at 3.

The KDR argues that the Court of Appeals' decision in *Martin* establishes a bright-line test for determining whether the testing procedures used by an officer substantially complies with the KDHE requirements. The KDR focuses on the language in *Martin* that strict adherence to the testing procedures is not required "where there is no evidence indicating the Intoxilyzer malfunc-

tioned or the breath sample was contaminated." 38 Kan. App. 2d at 9. According to the KDR, the burden is on the driver to come forward with some affirmative evidence establishing that the Intoxilyzer malfunctioned or the breath sample was contaminated. Because Mitchell failed to do so, the KDR argues that he failed to meet his burden of proving that the testing procedures were not in substantial compliance with the KDHE protocol.

Mitchell's case is distinguishable from *Martin* in several respects. In *Martin*, the entire observation period was videotaped and the videotape was presented as evidence at the hearing. Here, DeMerritt testified that Mitchell's booking process was videotaped but the videotape had been recorded over and was not available as evidence. More importantly, the petitioner in *Martin* testified that he did not belch, burp, vomit, regurgitate, or otherwise introduce a substance from his stomach to his mouth during the testing period. Here, when Mitchell was asked whether he belched or burped while he was alone in the restroom, he testified, "I may have, but I don't honestly remember." Finally, the district court specifically found that Mitchell consumed a cup of water during the deprivation period, and this fact was not present in *Martin*.

The KDR is correct in asserting that the burden of proof was on Mitchell at both the administrative hearing and at the hearing in district court. At the administrative hearing, Mitchell had the burden to prove by a preponderance of the evidence that the facts set out in DeMerritt's certification were false or insufficient to sustain the driver's license suspension. K.S.A. 8-1020(k). At the hearing in district court, Mitchell had the burden to show that the agency's decision should be set aside. K.S.A. 8-1020(q). However, neither subsection of the statute places a burden on Mitchell to provide affirmative evidence indicating the Intoxilyzer malfunctioned or the breath sample was contaminated. To the extent the KDR argues that such a burden exists, the agency has interpreted this court's holding in *Martin* too broadly.

In *Martin,* the court stated that strict adherence to the KDHE testing procedures is not required where there is no evidence indicating the Intoxilyzer malfunctioned or the breath sample was contaminated. 38 Kan. App. 2d at 9. This isolated language is some-

what inconsequential because strict adherence to the KDHE testing procedures is never required in a driver's license suspension case. As we have established, substantial compliance is the standard. *Schoen*, 31 Kan. App. 2d at 823. Nevertheless, the KDR focuses on this isolated language from *Martin* and argues that the converse is also true. The KDR argues the burden is on the driver to come forward with some affirmative evidence establishing that the Intoxilyzer malfunctioned or the breath sample was contaminated. Unless the driver can do so, the KDR argues that the driver fails to meet his or her burden of proving that the testing procedures were not in substantial compliance with the KDHE protocol. This is an unwarranted extension of the court's holding in *Martin* and places a burden on the driver that is not contained in the statute.

Although the district court found that Mitchell was out of DeMerritt's presence for a couple of minutes and that Mitchell consumed a cup of water sometime during the deprivation period, the district court concluded that the procedures used in Mitchell's breath test substantially complied with the KDHE protocol. In doing so, the district court indicated that if Mitchell had testified that he belched or burped while he was alone in the restroom, the testing procedures might have been compromised. In the absence of such evidence, the district court found that Mitchell did not meet his burden of proving that the testing procedures were not in substantial compliance with the KDHE requirements. It appears the district court adopted the KDR's argument that the burden was on Mitchell to provide some affirmative evidence indicating that the breath sample was contaminated. By doing so, the district court imposed a burden on Mitchell that is not contained in the statute.

We recognize that the burden of proof was on Mitchell at both the administrative hearing and at the bench trial in district court. We also recognize that K.S.A. 8-1020(h)(2)(F) only requires substantial compliance with the testing procedures set out by the KDHE, not strict compliance. The substantial compliance standard requires the petitioner in a driver's license suspension case to demonstrate a violation of the KDHE testing procedures that strikes

at the purpose for the protocol and casts doubt upon the reliability of the subsequent test results. This must be determined on a case-by-case basis. If affirmative evidence that a breath sample was *not* contaminated is presented, as in *Martin* and *Anderson,* this is a factor the court may consider in deciding whether substantial compliance with the protocol has been satisfied. However, there is no requirement for the petitioner to come forward with affirmative evidence that the Intoxilyzer malfunctioned or the breath sample was contaminated in order to establish that the testing procedures did not substantially comply with the KDHE protocol.

Here, the district court found that Mitchell was alone in the restroom out of DeMerritt's presence for a couple of minutes and that Mitchell consumed a cup of water sometime during the deprivation period. This does not constitute substantial compliance with the KDHE procedures. The evidence presented by Mitchell demonstrated a violation of the KDHE procedures that strikes at the purpose for the protocol and casts doubt upon the reliability of the subsequent test results. Mitchell did not unequivocally testify that he never belched or burped during the 20-minute deprivation period, as the drivers testified in *Martin* and *Anderson.* Instead, Mitchell testified that he may have done so.

Under the facts of this case, the procedures used in Mitchell's breath test failed to substantially comply with the KDHE protocol. Mitchell met his burden of showing that the agency's decision should be set aside. Accordingly, we conclude the district court erred in upholding the suspension of Mitchell's driving privileges.

Reversed.