(274 P.3d 655)
No. 105,188

GARY M. BOLTON, *Appellant*, v. KANSAS DEPARTMENT OF REVENUE, *Appellee*.

Opinion filed March 23, 2012.

*Barry A. Clark* and *Jeremiah L. Platt*, of Clark & Kellstrom, Chtd., of Manhattan, for appellant.

*J. Brian Cox*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before LEBEN, P.J., MALONE and BRUNS, JJ.

LEBEN, J.: A driver's license may be suspended when the driver fails a breath test for alcohol so long as the testing procedures substantially complied with the directives of the Kansas Department of Health and Environment. Gary Bolton appeals the suspension of his license based on the contention that because he wears dentures—that were left in his mouth for the breath test—the officer didn't follow the testing protocol that prohibits the "oral intake of anything" for 20 minutes before the test.

But intake is the act of taking something in, and Bolton's dentures were in his mouth well before the 20-minute observation period that precedes a breath test. See American Heritage Dictionary of the English Language 911 (5th ed. 2011) (defining intake as "[t]he act of taking in"). Moreover, all that's required is *substantial* compliance with the testing procedures. See K.S.A. 2010 Supp. 8-1020(h)(2)(F). Officers don't have to have people remove their dentures before performing a breath test for alcohol, so we affirm the suspension of Bolton's driver's license.

Bolton's case began after his 2008 DUI arrest. An officer asked him to take a breath test for alcohol on the Intoxilyzer 8000; Bolton agreed. The officer testified that he inspected Bolton's mouth, didn't see anything unusual, and asked Bolton whether he had anything in his mouth. According to the officer, Bolton said no. The officer didn't ask about dentures, though Bolton testified that he was wearing removable dentures at the time. The officer kept Bolton in his presence for an observation period (which must be at least 20 minutes but in this case went for 22 minutes), during which the officer didn't see Bolton put anything in his mouth. Bolton then blew into the machine, and it recorded a blood-alcohol content of .246, well over the legal limit of .08. See K.S.A. 2008 Supp. 8-1567(a)(2).

After an administrative hearing, the Kansas Department of Revenue affirmed the suspension of Bolton's driver's license based on the test failure. Bolton appealed to the district court, which hears cases like this independently based on evidence presented to the court. See K.S.A. 2010 Supp. 8-1020(p). The district court concluded that the officer had substantially complied with testing standards, and the court affirmed the license suspension. No facts related to the substantial-compliance issue are disputed, so we must make an independent determination of that issue on appeal, without any required deference to the district court. See *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629, 176 P.3d 938 (2008).

The legislature has provided for driver's license suspensions when a driver fails a breath test and the testing has been done in accordance with procedures established by the Kansas Department of Health and Environment. That agency has adopted an administrative regulation requiring that those who operate the testing equipment follow a standard operating procedure. See K.A.R. 28-32-9(b)(4). One of the challenges a driver may raise in appealing a license suspension is whether "the testing procedures substantially complied with" these procedures. K.S.A. 2010 Supp. 8-1020(h)(2)(F). Our court has said that to demonstrate lack of substantial compliance, the driver must show "a violation of the . . . testing procedures that strikes at the purpose for the protocol and casts doubt upon the reliability of the subsequent test results."

*Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, Syl. ¶ 4, 200 P.3d 496, *rev. denied* 289 Kan. 1279 (2009).

The testing protocol provided by the Kansas Department of Health and Environment requires that the machine operator "[k]eep the subject in [his or her] immediate presence and deprive the subject of alcohol for 20 minutes immediately preceding the test." In addition, the agency supplies an operator's manual for the Intoxilyzer 8000, and it includes this directive: "Do not allow subject to eat, drink, smoke, or chew gum, or to have oral intake of anything" during the 20-minute deprivation period.

Bolton argues that letting him blow into the machine with dentures in his mouth violated the directive not to let him "have oral intake of anything." But it certainly did not do so under the ordinary usage of the word intake: the dentures were already in Bolton's mouth, and he did not take them in during the 22 minutes the officer observed him before the test. Nor has Bolton provided any evidence that having dentures in one's mouth affects the breath-test result in any way.

The only evidence supporting Bolton's position is the officer's testimony that had he known Bolton had removable dentures in his mouth, the officer would have asked him to take them out before the test. But the officer said he would have done this "just to be safe and avoid issues down the road," not because anyone had trained him to do so.

The officer observed Bolton for more than 20 minutes, and Bolton didn't take anything into his mouth during that period. The officer substantially complied with testing procedures, even though Bolton wasn't asked to remove his dentures.

We conclude that an officer need not ask a driver to remove his or her dentures to comply with the established testing procedures. We note that all of the published appellate opinions we have been able to locate on this issue have come to the same conclusion. See *Schofield v. State*, 867 So. 2d 446, 448 (Fla. Dist. App. 2004); *People v. Witt*, 258 Ill. App. 3d 124, 126-27, 630 N.E.2d 156 (1994); *Farr v. Director of Revenue, State of Mo.*, 914 S.W.2d 38, 39-40 (Mo. App. 1996); *State v. Cook*, 9 S.W.3d 98, 101 (Tenn. 1999). Bolton did not present evidence that the presence of den-

tures would have affected the test result; thus, this case is not decided based upon a fact-finder's choice between competing expert witnesses. *Cf. Bruno v. Iowa Dept. of Transp.*, 603 N.W.2d 596, 597-98 (Iowa 1999) (affirming license suspension based on fact-finder's acceptance of expert testimony that dentures had no effect on test results over the testimony of competing expert).

The judgment of the district court is affirmed.