NOT DESIGNATED FOR PUBLICATION

No. 116,335

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RACHEL NEIMAN,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed June 23, 2017. Affirmed.

*Donald E. Anderson II*, of Robert A. Anderson Law Office, of Ellinwood, for appellant.

*John D. Shultz*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before ARNOLD-BURGER, C.J., HILL, J., and HEBERT, S.J.

*Per Curiam*:  Wanting to reverse the administrative suspension of their driving licenses, Kansas drivers must show the district court how the testing protocol was not followed in their case. Rachel Neiman argues that because she got bug repellant in her mouth, her breath test was invalid. Because Neiman offers speculation and no real proof of any breach of the testing protocol by the officer who performed her breath test, she failed to convince the district court and fails to persuade us, as well. We hold the district court correctly denied her appeal. We affirm the suspension of her driving license.

1

*A trooper stops Neiman.*

One evening in June 2015, Trooper Michael Paynter spotted Neiman driving without headlights. He stopped her. Neiman submitted to an evidentiary breath test at the scene on an Intoxilyzer 8000. They were outside when the trooper administered the breath test. During the deprivation period prior to the test, the trooper let Neiman apply bug repellant to her body. Toward the end of the deprivation period, some of her hair got into her mouth and she touched her finger to her mouth to remove the hair. The breath test result was .100. Trooper Payne arrested Neiman for driving under the influence. The trooper gave Neiman notice of the suspension of her driving license for failing the breath test.

Neiman asked for an administrative hearing. Then, in August 2015, an administrative hearing officer for the Kansas Department of Revenue affirmed the suspension of Neiman's driving license. Neiman then sought judicial review of her license suspension.

The district court held a hearing. The court watched a video recording of the traffic stop and the breath test. The Intoxilyzer 8000 testing protocol requires that the testing subjects be deprived of taking anything orally for a 20-minute period just before the breath test. Neiman testified that during her 20-minute deprivation period, she sprayed bug repellant on her body and in her hair. Toward the end of the deprivation period, her hand touched her mouth when she removed hair from her mouth.

The trooper did not restart the deprivation period. Neiman testified that she looked up the ingredients of the bug repellant on the internet and discovered alcohol was one of the ingredients. She looked at the "Material Safety Data Sheet," which she believed was from a government agency. She stated the can of bug repellant only showed active ingredients so that is why it did not show alcohol on the can.

2

Trooper Paynter testified that he saw Neiman spray bug repellant on herself. The trooper testified Neiman did indeed reach into her mouth and pull hair out of her mouth during the deprivation period. Paynter testified that he did not look at the can of bug repellant to confirm that it did not have alcohol in it. Instead, he relied on another trooper at the scene to inform him of that. Paynter testified that the other trooper examined the bug repellant and said it was fine and he could continue.

Paynter also testified that according to the testing protocol, if alcohol is introduced into a subject's mouth during the deprivation period, the deprivation period would have to be restarted. Trooper Paynter testified that if a person has alcohol in his or her mouth and blows into the Intoxilzyer, it indicates an error. No error was recorded in this case.

Clearly, the first step of the Intoxilzyer 8000 protocol states, "Keep the subject in your immediate presence and deprive the subject of alcohol for 20 minutes immediately preceding the breath test." The trooper stated that alcohol was the only material that, if introduced into a subject's mouth, would require restarting the deprivation period.

Neiman argued to the court that the test result should be invalidated because the troopers did not follow the testing protocol; specifically, the deprivation period requirements.

The district court found that Neiman sprayed her hair as well as her body with bug repellant. The court further found that she put her hand in her mouth to remove the hair that had gotten in her mouth. The court stated:

> "So the question is whether just that instantaneous pulling hair out of your mouth and putting your finger in there to get your hair out of your mouth would have been sufficient to throw out this test. I just can't see that being the case. I just don't see that that would foul a test result and so the Court finds that there was substantial compliance with

the protocol and the petitioner's failed to prove by a preponderance of the evidence that the protocol was not followed."

In this appeal, Neiman claims the breath testing procedures used in her case did not substantially comply with the Kansas Department of Health and Environment testing protocol for the Intoxilyzer 8000 because she got bug repellant in her mouth during the deprivation period.

*Neiman does not convince us that the trooper failed to follow the test protocol.*

Following a trial in the district court of an administrative driving license suspension, we review the record to see if the district court's decision is supported by substantial competent evidence. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). Substantial competent evidence means "'such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.'" *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 514, 242 P.3d 1179 (2010). In our review, we will not reweigh any conflicting evidence, make witness credibility determinations, or resolve questions of fact. *Mitchell v. Kansas Dept. of Revenue*, 32 Kan. App. 2d 298, 301, 81 P.3d 1258 (2004).

On review, the licensee has the burden to show the agency action should be set aside. K.S.A. 2015 Supp. 8-1020(q). Therefore, Neiman has the burden to show why her suspension should be lifted.

Neiman challenges whether "the testing procedures used substantially complied with the procedures set out by the Kansas department of health and environment" under K.S.A. 2015 Supp. 8-1020(h)(2)(F). Our court has defined substantial compliance as ""compliance in respect to the essential matters necessary to assure every reasonable

4

objective."'" *Martin v. Kansas Dept. of Revenue*, 38 Kan. App. 2d 1, 9, 163 P.3d 313 (2006).

In another case this court held:

"The substantial compliance standard requires the petitioner in a driver's license suspension case to demonstrate a violation of the KDHE testing procedures that strikes at the purpose for the protocol and casts doubt upon the reliability of the subsequent test results. This must be determined on a case-by-case basis." *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 122-23, 200 P.3d 496 (2009).

The statute does not require the licensee to provide affirmative evidence that the Intoxilyzer malfunctioned or the breath sample was contaminated. 41 Kan. App. 2d at 121-22.

Neiman contends that the trooper did not substantially follow the testing protocol because bug repellant, which contained alcohol, entered her mouth during the deprivation period. Neiman cites *Mitchell*, 41 Kan. App. 2d 114.

In *Mitchell*, 41 Kan. App. 2d at 123, the district court found that Mitchell was alone in the restroom for a couple of minutes and consumed a cup of water during the deprivation period. Mitchell did not remember whether he belched or burped while in the restroom. This court held that there was not substantial compliance with the KDHE protocols that read: "Do not allow subject to eat, drink, smoke, or chew gum, or to have any oral intake of anything" and "[k]eep the subject in [the officer's] immediate presence and deprive the subject of alcohol for 20 minutes." 41 Kan. App. 2d at 118, 123. The violation struck at the purpose for the protocol and casted doubt on the reliability of the test results. 41 Kan. App. 2d at 123. The court noted that the purpose of the 20-minute deprivation period was to ensure there was no residual alcohol in the person's mouth at the time of the breath test. 41 Kan. App. 2d at 119.

Unlike *Mitchell*, the concern in this case is not whether Neiman may have belched or burped and thereby introduced alcohol into her mouth from her stomach contents. Here, the concern is that Neiman may have introduced alcohol into her mouth from her hair or her fingers that were sprayed with bug repellant.

The protocol in the record states: "Keep the subject in your immediate presence and deprive the subject of alcohol for 20 minutes immediately preceding the breath test." The protocol does not say anything about depriving the subject of nonalcoholic substances and there was no testimony in the record about that.

We question whether the bug repellant contained alcohol. A trooper at the scene read the contents listed on the bug repellant can and determined that it did not contain alcohol. Neiman testified that she found information on the internet that the bug repellant did contain alcohol. But her attorney did not seek the admission of either the can of bug repellant itself or a list of its ingredients into evidence. The district court did not make a factual finding about whether the bug repellant contained alcohol. Rather, the district court seems to have decided that either way, Neiman failed to prove the protocol was not followed.

Among other things, the court found that Neiman sprayed her hair as well as her body with bug repellant. Hair got into her mouth and Neiman put her finger in her mouth to remove it. She could have had bug repellant on her hand and hair. She spent a lot of time "fooling" with her hair. The trooper watched Neiman throughout the entire deprivation period so the only possible break with protocol was her "very momentarily" sticking her finger into her mouth to get the hair out.

The court described the hair in mouth and removal as "instantaneous." In weighing the evidence, the court found that Neiman failed to prove by a preponderance of the evidence that the protocol was not followed. The court did not believe that "just that

6

instantaneous pulling hair out of your mouth and putting your finger in there to get your hair out of your mouth would have been sufficient to throw out this test."

The district court did not arbitrarily disregard undisputed evidence or rely upon some extrinsic consideration such as bias, passion, or prejudice to reach its decision.

In our review, we hold that the district court's factual findings are supported by substantial competent evidence. Neiman and the trooper both testified that Neiman sprayed her body and hair with bug repellant, her hair got her into her mouth, and she touched her hand to her mouth to remove the hair. The only real dispute was whether the bug repellant contained alcohol.

As shown on the video, Neiman ran her hands through her hair several times during the deprivation period. Neiman's back was turned to the camera at the time of the incident in question. But at one point, the trooper told Neiman not to put her hand in her mouth and Neiman said she just had done so because she had a hair in her mouth. The troopers then had a conversation about whether to start the deprivation period over. The incident was easy to miss so "instantaneous" is not an unfair description of it, though it was difficult to see with Neiman's back to the camera.

To us, the question is *substantial* compliance, not *strict* compliance. Neiman did not testify that any alcohol from her hair or fingers transferred to her mouth. And the time that her finger was in her mouth was brief enough to miss on the video. Unlike *Mitchell*, any breach of the protocol here was speculative.

The trooper testified that if a person has alcohol in his or her mouth and the person blows into the Intoxilzyer, the machine indicates an error. No error was seen in this case. A certified operator of a breath testing device is competent to testify regarding the proper procedures to be used in conducting the test. K.S.A. 2015 Supp. 8-1020(i). If affirmative

7

evidence that a breath sample was not contaminated is offered, the court may consider such evidence in deciding whether there was substantial compliance. *Mitchell*, 41 Kan. App. 2d at 122-23.

Considering the trooper's testimony and the lack of evidence that any alcohol ended up in Neiman's mouth from the momentary intrusion by her hair and finger into her mouth, the court's finding—that Neiman failed to show the lack of substantial compliance with the protocol—was reasonable.

Affirmed.