No. 119,766

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CRUZ MOLINA,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

SYLLABUS BY THE COURT

1.

Appeals from administrative suspensions of driver's licenses are subject to review under the Kansas Judicial Review Act (KJRA). They are considered by the district court de novo. The burden of proving the invalidity of the agency's action rests on the party asserting invalidity.

2.

When reviewing a driver's license suspension, an appellate court applies the substantial competent evidence standard. To uphold an agency's action it must be supported by evidence that is substantial when viewed in light of the record as a whole.

3.

Substantial compliance is sufficient to satisfy the protocols established by the Kansas Department of Health and Environment (KDHE) for administering an Intoxilyzer 9000 test of a suspected intoxicated driver. In driver's license suspension cases, the substantial compliance standard requires a licensee seeking to overturn the agency's action to demonstrate a violation of the KDHE testing procedures that strikes at the purpose for the protocol and casts doubt upon the reliability of the subsequent test results.

1

4.

The 20-minute alcohol deprivation period required before administering an Intoxilyzer 9000 test ends when the breath test is actually administered by the test subject providing a breath sample, not when the Intoxilyzer 9000 machine is turned on prior to the test.

Appeal from Ford District Court; VAN Z. HAMPTON, judge. Opinion filed December 13, 2019. Affirmed.

*Peter J. Antosh*, of Garcia & Antosh, LLP, of Dodge City, for appellant.

*John D. Shultz*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before LEBEN, P.J., GARDNER, J., and MCANANY, S.J.

MCANANY, J.: Cruz Molina appeals the district court's denial of relief on his petition for judicial review of the decision of the Kansas Department of Revenue to impose a one-year suspension on his driving privileges.

At the hearing before the district court, Molina failed to present evidence that the proper procedures were not followed in administering the Intoxilyzer 9000 breath test. The test results showed that Molina had been driving while intoxicated. Rather, Molina based his claim before the district court—and again before us—on a speculative and unsupported hypothetical scenario which itself is based on an erroneous understanding of how the statutory alcohol deprivation period is measured before the Intoxilyzer 9000 test is to be administered.

Because Molina has failed to show any impropriety in the manner in which the test was administered, we affirm.

2

Deputy Waide Scott of the Gray County Sheriff's Office stopped Molina for failing to maintain a single lane and changing lanes without signaling. Molina smelled of alcohol, his speech was slurred, he failed a series of field sobriety tests, he failed his preliminary breath test, and he told Deputy Scott that he had been drinking. Scott arrested Molina for driving under the influence and transported him to the Gray County Sheriff's Office.

At the sheriff's office, Scott administered the Intoxilyzer 9000 breath test. Scott was properly certified to operate the Intoxilyzer 9000, and the machine was properly certified. The testing protocol adopted by the Kansas Department of Health and Environment (KDHE) required that the test subject be deprived of alcohol for at least 20 minutes before providing a breath sample. Molina's 20-minute deprivation period began at 1:10 a.m. At 1:30 a.m. Scott turned on the Intoxilyzer 9000. At 1:33 a.m., 23 minutes after the alcohol deprivation period began, Scott administered the test and Molina provided a breath sample. Molina's breath sample was determined to have a breath-alcohol concentration of 0.218, far above the 0.08 breath-alcohol legal limit. Scott provided Molina with a notice that his driving privileges were being suspended.

Molina requested an administrative review. Following the administrative hearing before the Kansas Department of Revenue, Molina's one-year suspension of his driving privileges was affirmed. Molina sought further review by the Ford County District Court, claiming that Deputy Scott failed to substantially comply with the testing protocol set forth by the KDHE.

At the district court's brief and somewhat confusing 23-minute hearing on Molina's petition for judicial review, Molina's counsel acknowledged that he failed to subpoena Deputy Scott to testify at the hearing. Molina bore the burden of proof at the hearing. Nevertheless, his counsel stated, "I think the State should have its officer here. I was kinda counting on it. Of course, I wasn't counting on it so much that I didn't consider

3

maybe we should subpoena this officer." As a result, he had no testimony from Deputy Scott regarding compliance with the required alcohol deprivation period. His only witness was Molina, who provided no testimony whatsoever regarding the testing procedure or the 20-minute alcohol deprivation period.

Molina's counsel made what apparently started out to be a proffer of evidence but quickly turned into a summation of his client's position. He argued that Deputy Scott did not comply with KDHE testing protocols because he did not observe Molina for an entire 20-minute alcohol deprivation period. Molina does not contend that Scott left him unattended or unobserved during the deprivation period. Rather, he contends that Scott cut short the deprivation period.

Molina's counsel was trying to get into evidence the Intoxilizer test receipt which is in the record from the earlier administrative hearing. That receipt shows that the alcohol deprivation period for Molina began at 1:10 a.m. Scott turned on the Intoxilyzer machine at 1:30 a.m. From 1:30 a.m. through 1:32 a.m. the machine went through a series of diagnostic checks to assure the accuracy of the machine before the actual test was administered. The "Subject Test"—Molina providing a breath sample for the machine to analyze— took place at 1:33 a.m.

Under Molina's theory, the test began when the Intoxilyzer machine was initially turned on, not when he provided his breath sample. Because the Intoxilyzer test receipt only show hours and minutes but not seconds for the time of the actual test, and because the start of the alcohol deprivation period also was expressed in hours and minutes but not seconds, Molina contended that it was possible that the alcohol deprivation period started at 1:10:59 a.m. and the machine was turned on at 1:30:00 a.m., resulting in an alcohol deprivation period of only 19 minutes and 1 second, a full 59 seconds short of the 20-minute alcohol deprivation period. Of course, this is based on the assumption that the test occurred when the machine was turned on at 1:30 a.m., ignoring the fact that the test

4

receipt shows that the "Subject Test" actually occurred at 1:33 a.m., 23 minutes after the alcohol deprivation period began.

The district court rejected Molina's theory and upheld his license suspension. The court concluded that Molina failed to meet his burden to establish that Deputy Scott failed to substantially comply with the KDHE testing procedures. The court noted that there was no challenge to the test results, there was no evidence from the certifying officer showing a failure to comply with the testing protocol, and the test had been administered well after the 20-minute alcohol deprivation period had expired. Molina's appeal brings the matter to us.

The Kansas Judicial Review Act (KJRA) defines the scope of judicial review of state agency actions. K.S.A. 2018 Supp. 77-603(a). Appeals from administrative suspensions of driver's licenses are subject to review under the KJRA and are considered by the district court de novo. K.S.A. 2018 Supp. 8-259(a). On appeal, the burden of proving the invalidity of the agency action rests on the party asserting such invalidity. K.S.A. 2018 Supp. 77-621(a)(1). More specifically, in judicial review of a driver's license suspension administrative proceeding, K.S.A. 2018 Supp. 8-1020(q) states: "Upon review, the licensee shall have the burden to show that the decision of the agency should be set aside."

When reviewing a driver's license suspension, we apply the substantial competent evidence standard. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). Substantial evidence is evidence possessing relevance and substance that furnishes a basis of fact from which the issues can be reasonably resolved. *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 118, 200 P.3d 496 (2009). The KJRA provides that an agency action must be supported by evidence that is substantial when viewed in light of the record as a whole. See K.S.A. 2018 Supp. 77-621(c)(7) and (d).

5

The KDHE Intoxilyzer 9000 testing protocol states: "Keep the subject in your immediate presence and deprive the subject of alcohol for 20 minutes immediately preceding the breath test." As stated in *Mitchell*, 41 Kan. App. 2d at 119, "[t]he purpose of the 20-minute alcohol deprivation period is to make sure there is no residual alcohol in the subject's mouth at the time of the breath test." Substantial compliance is sufficient to satisfy this requirement. See K.S.A. 2018 Supp. 8-1020(h)(2)(F); *Schoen v. Kansas Dept. of Revenue*, 31 Kan. App. 2d 820, 823, 74 P.3d 588 (2003). Substantial compliance has been defined as "'compliance in respect to the essential matters necessary to assure every reasonable objective.'" *Martin v. Kansas Dept. of Revenue*, 38 Kan. App. 2d 1, 9, 163 P.3d 313 (2006). In driver's license suspension cases, the substantial compliance standard requires the petitioner "to demonstrate a violation of the KDHE testing procedures that strikes at the purpose for the protocol and casts doubt upon the reliability of the subsequent test results." *Mitchell*, 41 Kan. App. 2d at 122-23.

On appeal, Molina rests his case on the time sequence he argued before the district court. Molina's alcohol deprivation period began at 1:10 a.m. He argues that under the KDHE test protocol, the Intoxilyzer test began when the Scott, the operator, pressed the green "Start Test" button at 1:30 a.m. to turn on the machine, not when Molina provided a breath sample at 1:33 a.m. Because the Intoxilyzer results do not show seconds, there is no way of knowing whether Molina received a full 20-minute deprivation period. In other words, he theorizes that if his deprivation period began at 1:10:59 a.m. and the machine was turned on at 1:30:00 a.m., the test would have begun 59 seconds before the alcohol deprivation period ended.

The obvious problem with this hypothetical is that there is simply no evidence to support that this is what happened in Molina's case. Molina's burden of proof was not satisfied by positing some theory of what might have happened. Molina bore the burden of establishing that Deputy Scott actually cut short the required alcohol deprivation period. He failed to meet this burden.

6

Moreover, Molina's speculative hypothetical is based on the assumption that the deprivation period ended when Deputy Scott turned on the machine, not when the test was actually administered to Molina three minutes later. This is inconsistent with KDHE's protocol for the Intoxilyzer 9000.

To paraphrase the KDHE protocol, the Intoxilyzer 9000 test operator is required to (1) keep the subject in the operator's immediate presence and deprive the subject of alcohol for 20 minutes before the breath test; (2) make sure the power switch on the machine is activated and is in "Ready Mode"; (3) press the greet "Start Test" button and follow the instructions on the machine; (4) wait while the machine goes through a series of diagnostic checks; (5) be sure the machine shows the acceptable range of 0.075 to 0.085; (6) when prompted for "Subject Test," have the subject provide a breath sample by blowing into the machine's breath tube; and (7) wait for the printout of the test results. It is clear from the plain language of the KDHE protocol that the test occurs when the subject blows a breath sample into the machine, not when the machine is turned on and before it goes through its pre-test diagnostic checks.

In unpublished decisions we have rejected Molina's notion of when the test occurs. For example, see *Ruppe v. Kansas Dept. of Revenue*, No. 120,791, 2019 WL 5089723, at *1-2 (Kan. App. 2019) (unpublished opinion) (noting that a breath test was administered after a 36-minute deprivation period), *petition for rev. filed* November 12, 2019; and *Bryant v. Kansas Dept. of Revenue*, No. 99,515, 2009 WL 112821, at *1, 3 (Kan. App. 2009) (unpublished opinion) (noting that a 20-minute deprivation period ended once a breath test was actually administered).

The whole point of the alcohol deprivation period is to assure that the test subject has neither placed alcohol in his or her mouth during the deprivation period nor allowed some other substance in the test subject's body which could interfere with the accuracy of

the test that is about to be administered. It would make no sense for there to be a time lapse between the end of the deprivation and observation period and a later breath test.

Consistent with our prior unpublished opinions, we hold today that the 20-minute alcohol deprivation period ends when the Intoxilizer 9000 breath test is actually administered, not when the machine is turned on.

Finally, Molina does not claim that during the alcohol deprivation period Deputy Scott left him unattended. He does not contend that during this deprivation period he placed anything—alcoholic or otherwise—in his mouth so as to cause an inaccurate test result. He does not claim that during the deprivation period he belched, coughed, or vomited so as to adversely affect the test results. Even if Molina had established that he was deprived of from 1 to 59 seconds of the full 20-minute alcohol deprivation period, which he was not, under these circumstances there would have been substantial compliance with the KDHE protocol for administering the test. Such an insignificant shorting of the alcohol deprivation period would not have undermined the objective of the test and would not have cast doubt on the reliability of the test results. See *Mitchell*, 41 Kan. App. 2d at 122-23; *Martin*, 38 Kan. App. 2d at 9.

Molina failed to present any competent, probative evidence to support his contention that Deputy Scott failed to follow the applicable KDHE testing protocols. Deputy Scott provided Molina with a full 20-minute alcohol deprivation period before the Intoxilyzer 9000 test was administered. Molina failed to satisfy his burden of proof before the district court, and the district court properly denied relief on Molina's petition for judicial review and affirmed Molina's driver's license suspension.

Affirmed.