NOT DESIGNATED FOR PUBLICATION

No. 126,958

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RONNIE HICKLES,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.


MEMORANDUM OPINION

Appeal from Labette District Court; FRED W. JOHNSON JR., judge. Submitted without oral argument. Opinion filed January 3, 2025. Reversed and remanded with directions.

*Geoffrey Clark*, of Mason & Clark, LLC, of Fort Scott, for appellant.

*Marissa Jones*, of Kansas Department of Revenue, for appellee.


Before ISHERWOOD, P.J., WARNER and HURST, JJ.

PER CURIAM: Ronnie Hickles appeals the administrative suspension of his driver's license that was imposed following his failure of a breathalyzer test using the Intoxilyzer 9000. To overturn a license suspension after failing a breath test, the driver must show that the officer administering the test failed to substantially comply with the Kansas Department of Health and Environment's (KDHE) protocol. Following a thorough review of the record, we are not satisfied there was substantial competent evidence to support the district court's conclusion that the officer substantially complied with the KDHE's breathalyzer protocols. Accordingly, the decision of the district court affirming Hickles' license suspension is reversed.

1

In March 2021, Police Officer Joel Franklin stopped Hickles for a stop sign violation. The officer asked Hickles whether he had anything to drink that night, and Hickles acknowledged that he drank a couple of beers with his brother. Hickles later clarified that he consumed three to four beers within the last hour and a half.

Officer Franklin requested that Hickles perform a field sobriety test and then asked him to submit to a preliminary breath test (PBT). Hickles yielded a PBT test result of 0.109, more than the legal limit of 0.08, so he was placed under arrest for suspicion of DUI. Upon arrival at the police station, Hickles swished his mouth out with water then, after verifying Hickles' mouth was empty, Officer Franklin set a timer for the 20-minute deprivation period. Franklin explained that if Hickles put something in his mouth, burped, or coughed hard, he might bring alcohol into his mouth and compromise the test results. As the deprivation period wound down, Hickles remarked that he felt his heartburn "kicking up" and then burped. Seemingly oblivious to the burp, Officer Franklin simply continued working on his computer.

Hickles then informed Officer Franklin that he was experiencing gas around his esophagus and emitted a groan. The officer responded that he often experienced heartburn too. Hickles shared that he had "a few" of his intestines surgically removed and was on medication, then burped for the second time. Officer Franklin was equally unfazed by Hickles' second burp. The two men engaged in a discussion concerning their respective heartburn medications, and Hickles remarked that he heard "it's been known to throw off a breathalyzer before."

As Officer Franklin prepared to administer the breath test, he told Hickles that Hickles would be surprised "how far people come down in about an hour"—referring to the results of the PBT versus the breath test performed at the station. Approximately nine

minutes after Hickles' burp sequence concluded, the officer administered the breath test. This time, Hickles' test result registered as 0.107. Franklin commented that Hickles' result did not decrease as much as the officer anticipated that it would.

Hickles remarked that his heartburn caused him to fail a test once before when he was not on his medication. When Officer Franklin inquired whether Hickles was on his medication, Hickles told the officer that he had not taken any. Frankin did not take any particular action in response to that information. The failure of the breath test resulted in the suspension of Hickles' driving privileges for one year, followed by three years of restriction.

At various points during their time at the station, Officer Franklin left and went to what appeared to be an adjoining room. Even still, Hickles was always within the officer's view and earshot during the 20-minute deprivation period, even when he was in the adjoining room. According to an affidavit from the KDHE's records custodian, the Intoxilyzer 9000 used for Hickles' test was currently certified and Officer Franklin had the proper certification to operate it.

*The administrative hearing*

Hickles requested and received an administrative hearing before the Kansas Department of Revenue (KDOR). His attorney admitted Officer Franklin's body camera footage into evidence, and the hearing officer accepted testimony from both Franklin and Hickles.

The hearing officer concluded that Officer Franklin substantially complied with the KDHE's required procedure because while there was evidence of Hickles' belching, Franklin clarified that those actions did not demand that he reinitiate the deprivation

period. Hickles suspension was affirmed, and he pursued an appeal to the district court for judicial review of the administrative suspension.

*The district court hearing*

Officer Franklin also testified as a witness before the district court. He explained that he made Hickles wait the mandatory 20-minute deprivation period before the breath test was administered. Franklin acknowledged that the purpose of this deprivation period is to ensure no alcohol enters the subject's mouth before administering the test because its presence can result in a skewed result. He expressed awareness that alcohol may enter the mouth as a product of regurgitation, vomiting, or burping. The officer also stated that he was trained to watch for burps during the deprivation period, and he would restart the period "[i]f the burp reaches the level where [he] question[s] whether or not [Hickles] regurgitated stomach contents up." Franklin also acknowledged that mere air released from a test subject's stomach could potentially contain alcohol.

Officer Franklin also testified that based on his training, if alcohol was present in a subject's mouth, the Intoxilyzer 9000 would show a mouth alcohol error, restart the test, and inform the officer to restart the deprivation period. Thus, if there was alcohol in Hickles' mouth, the Intoxilyzer would have reflected as much. Franklin acknowledged that he was not familiar with any independent studies on the error rates of the "mouth alcohol slope detector" or the innerworkings of how that detector functioned, beyond the basic training he received from the State.

Officer Franklin explained that he did not document Hickles' first burp because it was "dry" as opposed to the "wet" variety that would prompt the officer to restart the deprivation period. Franklin acknowledged he lacked any formal training on differentiating between the two types of burps, he simply relied on their sound and his

4

"multiple years of experience of testing people." The officer also testified that he was aware heartburn occurs when acid enters the esophagus from the stomach.

Hickles testified and informed the court that he suffers from gastroesophageal reflux disease (GERD) and has treated it with medication for several years. Hickles also testified that his condition was particularly volatile on the night in question because he ran out of his medication and was unable to take it that day. He explained that contents from his stomach entered his mouth during the two burps at issue which is why he informed Officer Franklin that he was experiencing "'serious heartburn.'"

The district court affirmed the administrative officer's decision. In support of its conclusion, the district court noted that when Officer Franklin's testimony was coupled with the video, which demonstrated the Intoxilyzer 9000 did not detect alcohol in Hickles' mouth, it could not be said the breath sample was contaminated. Accordingly. Officer Franklin substantially complied with the governing protocol, the agency properly interpreted and applied the law, and its findings "are supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole."

Hickles now timely brings his case before our court for a determination of whether Officer Franklin's administration of the breath test undermined its validity and demands that Hickle's administrative suspension be reversed.

LEGAL ANALYSIS

*There was not substantial competent evidence to support the district court's ruling that the officer substantially complied with the KDHE's breathalyzer protocols.*

Hickles argues that the officer violated the KDHE testing protocol when he failed to reset the 20-minute deprivation period after Hickles burped twice.

5

The scope of judicial review of state agency actions is defined by the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. See K.S.A. 77-603(a). Appeals from driver's license suspensions are subject to review under the KJRA and are considered by the district court de novo. K.S.A. 8-259(a). On appeal, the party asserting the invalidity of the agency action bears the burden of proving such invalidity. K.S.A. 77-621(a)(1). Specifically, "[u]pon review, the licensee shall have the burden to show that the decision of the agency should be set aside." K.S.A. 8-1020(q).

Appellate courts apply a substantial competent evidence standard when reviewing driver's license suspensions. *Molina v. Kansas Dept. of Revenue*, 57 Kan. App. 2d 554, 557, 456 P.3d 227 (2019). Substantial evidence is that which has "relevance and substance" and "furnishes a basis of fact from which the issues can be reasonably resolved." 57 Kan. App. 2d at 557. Stated another way, "substantial evidence is legal and relevant evidence sufficient to reasonably support the conclusion reached by the district court." *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 118, 200 P.3d 496 (2009). The KJRA requires that an agency action be supported "by evidence that is substantial when viewed in light of the record as a whole." K.S.A. 77-621(c)(7); *Molina*, 57 Kan. App. 2d at 557. But where the issue raised in a driver's license suspension case involves a legal question, an appellate court's review of that legal question is unlimited. *Mitchell*, 41 Kan. App. 2d at 118.

The testing protocol for the KDHE Intoxilyzer 9000 requires investigating officers to: "Keep the subject in your immediate presence and deprive the subject of alcohol for 20 minutes immediately preceding the breath test." This requirement may be satisfied by demonstrating substantial compliance with its terms. See K.S.A. 8-1020(h)(2)(F); *Molina*, 57 Kan. App. 2d at 558. Substantial compliance has been defined as "'compliance in respect to the essential matters necessary to assure every reasonable objective.'" 57 Kan. App. 2d at 558. On appeal, the substantial compliance standard places the burden on Hickles "'to demonstrate a violation of the KDHE testing procedures

that strikes at the purpose for the protocol and casts doubt upon the reliability of the subsequent test results.'" 57 Kan. App. 2d at 558 (quoting *Mitchell*, 41 Kan. App. 2d at 122-23). Whether a violation rises to this level is determined on a case-by-case basis. *Mitchell*, 41 Kan. App. 2d at 123.

The purpose of the 20-minute deprivation period is to ensure that no residual alcohol is present in the subject's mouth at the time of the breath test. *Molina*, 57 Kan. App. 2d at 558 (citing *Mitchell*, 41 Kan. App. 2d at 119). The KDOR argues that the protocol should not be interpreted to mean that burping, in and of itself, constitutes a violation of the KDHE testing protocol. While this argument may be technically accurate, it sidesteps roughly two decades of Kansas caselaw which has interpreted the protocol to include alcohol introduced into the mouth through burping.

In cases where the drivers clearly testified that they never burped during the 20-minute deprivation period, minor deviations from the KDHE policy—such as having the driver out of the officer's presence for a few minutes—have satisfied the substantial compliance threshold. See *Mitchell*, 41 Kan. App. 2d at 120-23 (discussing *Martin v. Kansas Dept. of Revenue*, 38 Kan. App. 2d 1, 9, 163 P.3d 313 [2006]; *State v. Anderson*, No. 94,364, 2006 WL 903168 [Kan. App. 2006] [unpublished opinion]). And when a driver later recanted a statement that he did not burp, a panel of this court nevertheless found the officer substantially complied with the protocol because the officer was entitled to rely on the truthfulness of a driver's response. *Rozean v. Kansas Dept. of Revenue*, No. 108,826, 2013 WL 5736123, at *3 (Kan. App. 2013) (unpublished opinion). But unlike these cases, the parties here do not contest the fact that Hickles burped on more than one occasion during a key period of time.

Further, in *Woods v. Kansas Dept. of Revenue*, the driver either burped or coughed during the deprivation period, but according to the officer's testimony, Woods stated that nothing came up into his mouth. No. 101,981, 2010 WL 3564699, at *1 (Kan. App. 2010)

7

(unpublished opinion). The officer also visually inspected Woods' mouth twice before administering the test and did not see anything that he believed would affect the test. With these facts, a panel of this court affirmed the district court's finding that the officer substantially complied with the KDHE protocol. 2010 WL 3564699, at *1-2. Here, Officer Franklin specifically testified that he was trained to watch for burps during the deprivation period, yet both times Hickles undeniably did that very thing, unlike the officer in *Woods*, Officer Franklin did not react in any meaningful way. Notably, in *Mitchell*, another panel of this court held that the mere possibility of the driver having burped while he was out of the officer's presence was enough to demonstrate a violation of the KDHE protocol that struck at the purpose of the protocol and cast doubt upon the reliability of the subsequent test results. *Mitchell*, 41 Kan. App. 2d at 121, 123.

At the district court, Hickles bore the burden to demonstrate that he was subjected to a violation of the KDHE testing procedure which struck at the very purpose for which that protocol was established that, in turn, cast doubt upon the reliability of his breath test result. See *Molina*, 57 Kan. App. 2d at 558. Hickles sustained this burden when he established that Officer Franklin failed to take any investigative or corrective measures when Hickles burped twice during the 20-minute period. See *Mitchell*, 41 Kan. App. 2d at 123; *Woods*, 2010 WL 3564699, at *2.

The KDOR takes the position that substantial compliance was met because even though Hickles burped, he did not tell Officer Franklin that any alcohol entered his mouth and the Intoxilyzer 9000 did not issue any mouth alcohol alert, so therefore, there must not have been any alcohol in Hickles' mouth. The district court accepted this argument and affirmed the administrative officer's decision.

We do not feel similarly inclined. The absence of an alert from the Intoxilyzer does not constitute legal and relevant evidence sufficient to reasonably support the conclusion reached by the district court. Substantial compliance requires "'compliance in

respect to the essential matters necessary to assure every reasonable objective.'" *Molina*, 57 Kan. App. 2d at 558. The underlying rationale for the alcohol deprivation period is to ensure that the test subject has neither placed alcohol in his or her mouth nor allowed some other substance to enter his or her mouth which could potentially interfere with the accuracy of the breath test. 57 Kan. App. 2d at 559. But the argument advanced by the KDOR essentially renders the KDHE protocol obsolete. Rather, the KDOR essentially advocates for supplanting the protocol with the Intoxilyzer 9000's mouth alcohol detector. Meaning that investigating officers could simply begin the test and only stop to conduct another deprivation period in those instances when the breathalyzer equipment alerted to the presence of mouth alcohol. We are not willing to abandon the procedural safeguards in place by virtue of the KDHE protocol.

The KDOR highlights language from *Mitchell*, which states that "[i]f affirmative evidence that a breath sample was *not* contaminated is presented, as in *Martin* and *Anderson,* this is a factor the court may consider in deciding whether substantial compliance with the protocol has been satisfied." 41 Kan. App. 2d at 123. We do not find this quote compelling given the facts of Hickles' case. Neither of those cases hinged on evidence of whether the breathalyzer device detected alcohol in the mouths of the drivers because those drivers testified they did not burp. See *Martin*, 38 Kan. App. 2d at 10; *Anderson*, 2006 WL 903168, at *1. We note it is clear from *Mitchell* that Hickles did not have the burden to come forward with affirmative evidence showing that the Intoxilyzer 9000 malfunctioned, as would seemingly be required if we adopted KDOR's position. See *Mitchell*, 41 Kan. App. 2d at 121-22.

As it stands, the KDHE's protocol requires investigating officers to keep the testing subject in their immediate presence and deprive him or her of alcohol for the 20-minute period immediately preceding the breath test. The fact the Intoxilyzer 9000 did not alert to the presence of mouth alcohol is of no moment and is therefore insufficient to demonstrate that Officer Franklin substantially complied with the KDHE protocol. Such

9

an approach does not ensure that every reasonable objective of the protocol was met and falls well short of the substantial competent evidence required to undergird the district court's conclusion that Officer Franklin substantially complied with the KDHE protocol.

Accordingly, we reverse the district court's decision affirming Hickles' suspension and remand with directions to vacate the suspension order.

Reversed and remanded with directions.